UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHERYL CROCI,

              Plaintiff,

     -v-

TOWN OF HAVERSTRAW, GEORGE WARGO,
and HOWARD PHILLIPS,

             Defendants.

Case No. 14-CV-5138 (KMK)

OPINION & ORDER

---

Appearances:

Ambrose Wotor Wotorson, Jr., Esq.
Law Offices of Ambrose Wotorson, P.C.
New York, NY
*Counsel for Plaintiff*

Kenneth Ethan Pitcoff, Esq.
Morris Duffy Alonso & Faley
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiff Cheryl Croci ("Plaintiff") brings this action against defendants Town of Haverstraw (the "Town"), George Wargo ("Wargo"), and Howard Phillips ("Phillips") (collectively, "Defendants") asserting claims pursuant to 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296, and 42 U.S.C. § 1983 for violation of her First Amendment rights and for violations of procedural and substantive due process. Defendants move to dismiss Plaintiff's Title VII retaliation claim, § 1983 claims, and state law claims on various grounds. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are taken from Plaintiff's Amended Complaint and are assumed to be true for purposes of this Opinion.  Plaintiff began working for the Town in 1997, and, according to Plaintiff, at all relevant times, her performance has been satisfactory.  (Am. Compl. ¶ 9 (Dkt. No. 14).)  In March 2000, Plaintiff began working for the Town's Highway Department as a personal assistant.  (*Id.* ¶ 10(a).)  Since that time, Plaintiff was re-appointed to that position every two years.  (*Id.* ¶ 10(b).)  On or about March 2, 2010, Plaintiff began to formally complain about sex discrimination and an allegedly hostile work environment based upon her gender.  (*Id.* ¶ 10(c).)  According to Plaintiff, these complaints were continuing in nature, and Defendants' agents investigated her complaints on two separate occasions.  (*Id.*)  At the end of the first investigation, the agents concluded that her complaints were unsubstantiated.  (*Id.*)

Nevertheless, Plaintiff alleges that Phillips, the Town Supervisor, was "not pleased" with Plaintiff's complaints, and, in response to her complaints, falsely alleged that Plaintiff had engaged in sexually inappropriate behavior.  (*Id.* ¶ 10(d).)  According to Plaintiff, Phillips made this allegation "without any credible basis for doing so," and further "issued a pretextual and retaliatory warning to Plaintiff," while "utterly fail[ing] to punish Plaintiff's harasser(s) in any regard or to ensure that such harassment did not occur in the future."  (*Id.*)

Nevertheless, Plaintiff's complaints persisted, and Defendants undertook a second investigation, which concluded that her gender-based hostile work environment claims were substantiated.  (*Id.* ¶ 10(e).)  As a result, Plaintiff alleges, her harasser was eventually removed from the garage where Plaintiff worked and was suspended for 15 days in August or September 2013, after Plaintiff had already filed a sexual harassment lawsuit, and was instructed to avoid

further contact with Plaintiff.  (*Id.* ¶ 10(f).)  Despite this outcome, Plaintiff alleges that Phillips—who remained in his position and was not subject to any punishment—"was not pleased with . . . Plaintiff's complaining about a gender-based hostile work environment, nor about [the] outcome of the second investigation."  (*Id.*)  In addition to her internal complaints, in or about 2011, Plaintiff filed a lawsuit in Rockland County State Supreme Court, alleging sexual harassment, sex discrimination, and a hostile work environment based on gender.  (*Id.* ¶ 10(g).)  Plaintiff alleges that that complaint was served on Phillips, who was aware of the suit and participated in its defense, and served on the Town.  (*Id.*)

Later, in or around March or April 2012, Plaintiff attended a luncheon for the Superintendents of the Highways Association.  (*Id.* ¶ 10(h).)  During the luncheon, an engineer/consultant brought up and discussed Plaintiff's pending sexual harassment charges with Wargo, then one of the foremen for the County of Rockland Highway Department, in Plaintiff's presence.  (*Id.* ¶¶ 10(h)–10(i).)  After Wargo asked her, Plaintiff said that she did have sexual harassment charges pending against the Town.  (*Id.* ¶ 10(i).)

The next year, in May 2013, Phillips met with John Piperato, who at the time was "attempting to run" for Superintendent of the Haverstraw Highway Department.  (*Id.* ¶ 10(j).)  During the meeting, Phillips allegedly suggested that he would back Piperato's bid only if Piperato fired Plaintiff once elected, because of Plaintiff's sexual harassment and hostile work environment claims.  (*Id.*)  Piperato declined the invitation, and Phillips subsequently backed Wargo in his pursuit of the Superintendent's position.  (*Id.* ¶¶ 10(k)–10(l).)  According to Plaintiff, Wargo was "not pleased with Plaintiff's protected activities and . . . did not want her to work under his charge, precisely because of her prior protected activities, which he was aware of."  (*Id.* ¶ 10(l).)  Nevertheless, prior to the election, Wargo assured Plaintiff on several

occasions that he intended to keep her on as a personal assistant if he were elected and that her position was secure since she had been in it for "so long."  (*See id.* ¶ 10(o).)

In or about July 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging ongoing sexual harassment, sex discrimination, and a hostile work environment based upon her gender.  (*Id.* 10(m).)  The Town was served with a copy of the complaint, and Phillips, who, Plaintiff alleges, became aware of and participated in the defense to that complaint, was "not pleased with Plaintiff's EEOC filling."  (*Id.*)

In November 2013, Wargo was elected as a Democrat to the position of Superintendent of Highways.  (*Id.* ¶ 10(n).)  The next month, despite Wargo's earlier assurances to the contrary and without any explanation, Plaintiff was informed that Phillips and Wargo decided that she should no longer be the personal assistant to the Superintendent of Highways.  (*Id.* ¶ 10(p).) Plaintiff was not given any notice or right to be heard before her termination.  (*Id.* ¶ 10(t).) Moreover, Plaintiff was the only support staffer in the Highway Department who was not retained, despite the fact that she, like Wargo and Phillips, was a registered Democrat, and even though other Town employees have kept their positions after past elections, including three secretaries in the Town Clerk's office. (*Id.* ¶¶ 10(q)–10(s).)[1]  Plaintiff alleges that Wargo—who is a Town employee and ultimately answerable to Phillips—participated in the decision to terminate Plaintiff on account of her "prior protected activities in formally pursuing sexual harassment claims against the Town."  (*Id.* ¶ 10(s).)

---

[1]  It is not clear whether Plaintiff alleges these secretaries retained their jobs after the November 2013 election or some other election.

### B.  Procedural Background

On July 9, 2014, Plaintiff brought the instant Action against Defendants.  (Dkt. No. 1.)
Because no proof of service had been filed within 120 days of when Plaintiff filed the original
Complaint, on January 7, 2015, the Court ordered that Plaintiff properly serve the summons and
complaint and file proof of such action, or, alternatively, demonstrate good cause to the Court
concerning Plaintiff's failure to effect such service.  (Dkt. No. 3.)  After successful service by
that date, (Dkt. Nos. 4–6), Defendants requested on March 10, 2015 a pre-motion conference in
advance of their anticipated Motion to Dismiss the Complaint, (Dkt. No. 10.)  By letter dated
March 19, 2015, Plaintiff requested leave to file an Amended Complaint, (Dkt. No. 11–12), and
did so on April 6, 2015, (Dkt. No. 14).  Having reviewed Plaintiff's then-still-proposed Amended
Complaint, Defendants submitted a letter to the Court indicating that they wished to renew their
request for a pre-motion conference in advance of an anticipated Motion to Dismiss.  (Dkt. Nos.
13, 15.)  Plaintiff responded, (Dkt. Nos. 16–17), and, after a pre-motion conference held on May
7, 2015, (Dkt. (minute entry for May 7, 2015)), Defendants filed their Motion to Dismiss and
accompanying papers on June 26, 2015, (Dkt. Nos. 19–21).  Plaintiff filed her Opposition by
August 1, 2015, (Dkt. Nos. 24–26), and Defendants submitted their Reply on August 21, 2015,
(Dkt. No. 27).

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the
Federal Rules of Civil Procedure.  "While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds
of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and, although a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Graham v. Macy's Inc.*, No. 14-CV-3192, 2015 WL 1413643, at *1 n.1

(S.D.N.Y. Mar. 23, 2015) ("For the purpose of resolving the motion to dismiss, the [c]ourt assumes all well-pled facts to be true . . . ."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

B. Analysis

Defendants move to dismiss (1) Plaintiff's Title VII retaliation claims on the grounds that she is not an employee, (2) Plaintiff's due process claims on the grounds that she does not have an adequate property interest, (3) Plaintiff's § 1983 claims against the individual defendants on the grounds that they are protected by the doctrine of qualified immunity, and (4) Plaintiff's state law claims on the grounds that she did not comply with Town Law § 67. The Court agrees with the second and fourth propositions, disagrees with the first, and need not decide the third.[2]

1. Title VII

As noted, Defendants first argue that Plaintiff's Title VII retaliation claim should be dismissed because Plaintiff is not an "employee" within the meaning of Title VII. (Mem. of Law

---

[2] In addition, Defendants moved to dismiss Plaintiff's § 1983 claim for violations of her First Amendment rights. (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss 8–9 (Dkt. No. 21).) In her Opposition, Plaintiff conceded that she had failed to state a First Amendment claim, and, therefore, withdrew it. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss Pursuant to Rule 12(b)(6) ("Pl.'s Mem.") 18 (Dkt. No. 26).)

in Supp. of Defs.' Mot. To Dismiss ("Defs.' Mem.") 4–8 (Dkt. No. 21).)  The argument is premature at this stage, and Defendant's Motion is therefore denied.

To begin, under the relevant provision, an employee is defined as

> [A]n individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, *or any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.  The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f) (emphasis added).  The provision thus exempts four categories of workers: (1) elected officers; (2) individuals chosen by such an officer to be members of his or her "personal staff;" (3) such officer's appointees on a policymaking level; or (4) an immediate advisor with respect to the exercise of the powers of the office.  *Bland v. New York*, 263 F. Supp. 2d 526, 536 (E.D.N.Y. 2003); *see also Zagaja v. Vill. of Freeport*, No. 10-CV-3660, 2015 WL 3507353, at *6 (E.D.N.Y. June 3, 2015) (same).  "Title VII does not define 'personal staff.'" *Maioriello v. New York*, No. 05-CV-1062, 2008 WL 398483, at *8 (N.D.N.Y. Feb. 12, 2008). Nevertheless, "[t]he question of who is an exempt employee is a matter of federal, not state law, although state law may clearly illuminate the job responsibilities and status of [an] individual considered under the statute."  *Bland,* 263 F. Supp. 2d at 536; *see also Zagaja*, 2015 WL 3507353, at *6 (same).  The Second Circuit has not addressed the "personal staff" exemption contained in § 2000e(f), although it has considered the policymaking exemption found in both § 2000e(f) and the identically-worded, analogous provision of the Age Discrimination in Employment Act ("ADEA").  *See Butler v. N.Y. State Dep't of Law*, 211 F.3d 739, 741, 749 (2d Cir. 2000) (finding an assistant attorney general who also served as deputy bureau chief of the

litigation department at the New York State Department of Law to fall within policymaker exception of Title VII); *Tranello v. Frey*, 962 F.2d 244, 251 (2d Cir. 1992) (finding former deputy county attorney not excluded from ADEA as a policymaker where he was not appointed by an elected public official); *E.E.O.C. v. State of Vt.*, 904 F.2d 794, 800 (2d Cir. 1990) (finding appointed judges not excluded from ADEA's definition of employee as policymakers), *overruled on other grounds by Gregory v. Ashcroft*, 501 U.S. 452 (1991); *see also Maioriello*, 2008 WL 398483, at *8 ("[W]hile the Second Circuit has addressed the 'policy maker' exemption to Title VII's definition of employee, it has not considered the 'personal staff' exemption.").  Each time, the Second Circuit, quoting the relevant legislative history, suggested that § 2000e(f)'s exceptions were to be "construed narrowly."  *Butler*, 211 F.3d at 747 (internal quotation marks omitted); *see also Tranello*, 962 F.2d at 250 (same); *State of Vt.*, 904 F.2d at 800 (same); *accord Howard v. Ward Cty.*, 418 F. Supp. 494, 502 (D.N.D. 1976) ("The legislative history of this provision . . . indicates that Congress intended that this exclusion be construed very narrowly.").[3]

Other circuit courts—as well as district courts—have, however, weighed in on the scope of the "personal staff" exception.  In a particularly influential opinion, the Fifth Circuit developed a non-exhaustive list of six factors to determine whether an individual falls into the Title VII's "personal staff" exception.  *See Teneyuca v. Bexar Cty.*, 767 F.2d 148, 151 (5th Cir. 1985).  Those factors are:

(1) whether the elected official has plenary powers of appointment and removal,
(2) whether the person in the position at issue is personally accountable to only that

---

[3] Although these decisions did not deal with the personal staff exception, their observations concerning the exceptions' narrow construction apply equally to the personal staff exception.  *See Owens v. Rush*, 654 F.2d 1370, 1375 (10th Cir. 1981) ("The legislative history of [§] 2000e(f) indicates that Congress intended that the personal staff exception be construed narrowly."); *see also Conley v. City of Erie, Pa.*, 521 F. Supp. 2d 448, 452 (W.D. Pa. 2007) ("These exemptions [in § 2000e(f)], commonly referred to as the 'personal staff' and 'policy making' exemptions, are to be narrowly construed.").

elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id.* Many other courts have drawn on the *Teneyuca* analysis. *See, e.g.*, *Hemminghaus v. Missouri*, 756 F.3d 1100, 1108 (8th Cir. 2014); *Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151, 158 (6th Cir. 2004); *Smith v. Town of Hempstead*, 21 F. Supp. 3d 202, 205 (E.D.N.Y. 2014); *Bland*, 263 F. Supp. 2d at 539–40.  In conducting this analysis, courts have made clear that the proper inquiry is highly fact intensive, rendering resolution on purely legal grounds difficult.  *See Teneyuca*, 767 F.2d at 152 ("This [c]ourt notes that the highly factual nature of the inquiry necessary to the determination of the 'personal staff' exception does not lend itself well to disposition by summary judgment."); *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 790 (E.D.N.Y. 1999) ("[T]he highly factual nature of the inquiry necessary to the determination of the 'personal staff' exception does not lend itself well to disposition by summary judgment" (some internal quotation marks omitted)); *Leving v. City of Chi.*, No. 87-CV-1077, 1988 WL 20046, at *2 (N.D. Ill. Mar. 1, 1988) ("The application of these facts to determine whether a person is a member of an elected official's 'personal staff' involves a factual determination.  The resolution of factual issues is [in]appropriate in a Rule 12(b)(6) motion for dismissal.").  Nevertheless, in appropriate circumstances, a court may still make the determination upon a motion to dismiss or a summary judgment motion.  *See Bland*, 263 F. Supp. 2d at 544 (granting motion to dismiss, finding that the plaintiff was personal staff and thus not an employee, reasoning that "in the present case there are no issues of fact with regard to the question to be resolved on the motion"); *see also Harris v. Anne Arundel Cty.*, No. 12-CV-829, 2014 WL 4924308, at *4–5 (D. Md. Oct. 1, 2014) (concluding "as a matter of law" that "constituent services specialist" was part of the county

executive's "personal staff" based on "her personal selection by [the county executive], involvement with [his] campaigns, frequent contact with [him], frequent appearances at public events at which she represented [the county executive], and consultation on appointments"), *aff'd sub nom. Harris v. Leopold*, 600 F. App'x 114 (4th Cir. 2015); *Guy v. State of Ill.*, 958 F. Supp. 1300, 1305–06 (N.D. Ill. 1997) (noting that, although it "may be true in certain instances" that "whether [the position at issue] falls within the scope of the 'employee' exemption is a fact-specific issue that cannot be disposed of via a 12(b)(6) motion," "where the duties of the position in question are a matter of 'common knowledge,' a court can make a determination in the context of a motion to dismiss").

 Here, Defendants argue that Plaintiff is not an employee because her job title was at all relevant points "Confidential Secretary to the Superintendent of Highways," (*see* Defs.' Mem. 5), and that this position "undoubtedly qualifies as a member of the Superintendent of Highways' 'personal staff' under 42 U.S.C. § 2000e(f)," (*see id.* at 6).  Nevertheless, as Defendants concede, Plaintiff does not adopt that job title in the Amended Complaint, rather, calling herself a "personal assistant."  (*See* Defs.' Mem. 4–5 (citing Am. Compl. ¶¶ 6, 10(p)).)  All the same, Defendants ask that the Court take judicial notice of certain public documents and a filing from the state court action identifying Plaintiff as a "confidential secretary," (*see* Defs.' Mem. 5 (citing Att'y Aff'n ("Pitcoff Aff'n") Ex. E (Dkt. No. 20); Pitcoff Aff'n Ex. F; Pitcoff Aff'n Ex. G)), which, according to Defendants, the Court can do, as these documents are matters of public record, (*see* Defs.' Mem. 5 (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745–46 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993); *Marshall Invs. Corp. v. Krones, Inc.*, No. 13-CV-118, 2013 WL 1962671, at *1 n.2 (W.D. Pa.

May 10, 2013), *aff'd*, 572 F. App'x 149 (3d Cir. 2014))).  The Court's ability to take judicial

notice of these documents is not, however, so cut-and-dry.  Although there is no question that

courts may take judicial notice upon a motion to dismiss of public documents in at least some

circumstances, *see, e.g.*, *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts

Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that the court "may also look to public

records, including complaints filed in state court, in deciding a motion to dismiss"); *Kramer v.

Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding courts may take judicial notice of

public disclosure documents the filing of which is required by law), that does not mean that the

courts may take as true any statement found in any document that a party asserts to be public, *see

Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("[A]lthough [a]

final determination [by a New York City administrative body] and [the] testimony [of the

president and sole shareholder of the plaintiff company] may be public records of which a court

may take judicial notice, it may do so on a motion to dismiss only to establish the existence of

the opinion, not for the truth of the facts asserted in the opinion." (internal quotation marks

omitted)); *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-CV-5608, 2013

WL 135216, at *4 (S.D.N.Y. Jan. 10, 2013) ("[I]t is well established that courts may take

judic[i]al notice of publicly available documents on a motion to dismiss.  In the motion to

dismiss context, however, a court should generally take judicial notice to determine what

statements the documents contain[,] not for the truth of the matters asserted." (alterations,

citation, and internal quotation marks omitted)); *Schubert v. City of Rye*, 775 F. Supp. 2d 689,

696 n.3 (S.D.N.Y. 2011) (noting that "the minutes and recordings of the City Council meetings

are matters of public record and therefore are the types of materials of which a court may take

judicial notice," but adding that "the [c]ourt [would] consider these materials for the limit[ed]

purposes of determining the fact of the meetings and the actions taken by the relevant parties, not for the truth of any statements made during these proceedings"); *Old St. George's LLC v. Bianco*, No. 08-CV-5321, 2009 WL 8668386, at *3–4 (S.D.N.Y. May 8, 2009) (noting that the defendants submitted as an exhibit to their motion to dismiss "minutes of Town of Yorktown Town Board meetings concerning [the property at issue]," but stressing that the court "only considered the [a]mended [c]omplaint and the exhibits attached thereto, as well as documents provided by [the] [d]efendants that are referred to in the [a]mended [c]omplaint but not attached thereto"), *aff'd*, 389 F. App'x 33 (2d Cir. 2010).  Likewise, the law is clear that, while judicial notice may be taken of filings in other courts, such notice may not be taken to establish the truth of the matters contained in those filings.  *See, e.g.*, *Kramer*, 937 F.2d at 774 ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-CV-1898, 2015 WL 9777725, at *3 (S.D.N.Y. Dec. 7, 2015) ("[T]he [c]ourt may take judicial notice of filings in other courts not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)).  Therefore, the Court does not accept the proposition that, in deciding whether Plaintiff falls in the "personal staff" exception, it may proceed on the logic that she was a "confidential secretary"—subject to all the corollaries that Defendants suggest that title entails—based purely on statements referring to her as such, found in minutes of the Haverstraw Town Board (Exhibit F), *see Old St. George's LLC*, 2009 WL 8668386, at *3, Plaintiff's state court complaint (Exhibit G), *see Kramer*, 937 F.2d at 774, or a memo apparently from the "Commissioner of Personnel" for Rockland County to Phillips with handwriting on it (Exhibit E), suggesting that it may not even be a public

13

document.[4]  Accordingly, the Court also declines to reach this conclusion based on the fact that, as Defendants stress, (*see* Defs.' Mem. 4 (citing Compl. ¶ 11(m) (Dkt. No. 1)), Plaintiff refers to herself in the original complaint as the "Secretary to the Superintendent of Highways," (Compl. ¶ 11(m)).[5]

Defendants' strenuous effort to label Plaintiff as the "confidential secretary" to the superintendent apparently are predicated on the idea that elected officials' secretaries are "personal staff" within the meaning of § 2000e(f).  In addition to making intuitive sense, this proposition finds support in the relevant legislative history.  *See Bland*, 263 F. Supp. 2d at 537–38 (quoting colloquy between senators relating to the amendment that would become personal staff exception, concluding that "the legislative history unequivocally indicates that 'personal staff' means, first and foremost, 'personal secretary'").  Moreover, this intuition is further augmented by the fact that regulations interpreting an analogous provision in the Fair Labor Standards Act explicitly mention "personal secretar[ies]" as an example of "personal staff."  *Compare* 29 U.S.C. § 203(e)(2)(C)(ii)(II) (excluding from definition of employee any individual "selected by the holder of [public elective] office to be a member of his personal staff") *with* 29

---

[4] Defendants also suggest that the Court consider additional documents submitted to establish that the "confidential secretary" position was not subject to the protections of New York's state civil service law.  (*See* Defs.' Mem. 7–8.)  Because the Court need not reach that question to decide the instant Motion, consideration of those documents is unnecessary.

[5] Relatedly, Defendants' argument falls particularly flat in its assertion that Plaintiff "obscures the nature of [her] employment with the Town in an attempt to avert dismissal" by describing herself in her amended complaint as "a personal assistant with the Highway Department," (Defs.' Mem. 4 (quoting Am. Compl. ¶ 6)) and as "the personal assistant to the Superintendent of Highways," (*id.* at 5 (quoting Am. Compl. ¶ 10p)), whereas she had, in her original complaint's corresponding paragraphs, referred to herself as "a secretary with the Department of Transportation," (Compl. ¶ 6), and "Secretary to the Superintendent of Highways," (Compl. ¶ 11(m)).  To suggest that the meaning of "personal staff," *see* 42 U.S.C. § 2000e(f), excludes "personal assistant[s]," (Am. Compl. ¶¶ 6, 10p), but includes "secretar[ies]," (Compl. ¶¶ 6, 11(m)), and with such clarity that that should matter upon a motion to dismiss is, at best, debatable.

C.F.R. § 553.11(b) (noting that *"*[t]he statutory term 'member of personal staff' generally includes only persons who are under the direct supervision of the selecting elected official and have regular contact with such official" and that "the term might include the elected official's personal secretary"); *see also Bland*, 263 F. Supp. 2d at 538 (noting same).

But even if there is a compelling case to be made that elected officials' secretaries are, as a general matter, "personal staff," that does not mean that it is appropriate to apply that exception at the motion dismiss stage to any plaintiff whose job title suggests that he or she is the assistant, secretary, or even confidential secretary to an elected official.  Rather, to answer the question of whether Plaintiff was "personal staff," this Court—like many before it—looks to the factors enumerated in *Teneyuca*.  *See Bland*, 263 F. Supp. 2d at 540 (applying *Teneyuca* factors).  At this stage, it is simply too early to know, for instance, whether Plaintiff is "personally accountable to *only* that elected official" (factor two), whether Plaintiff "represents the [Superintendent of Highways] in the eyes of the public" to any meaningful extent (factor three), or the level of Plaintiff's position within the Department's chain of command (factor five).  *See Teneyuca*, 767 F.2d at 151 (emphasis added).  Accordingly, Defendant's Motion to Dismiss, on this basis, is denied, though it would hardly be surprising if the issue is re-visited at summary judgment.  *See Milliones v. Fulton Cty. Gov't*, No. 12-CV-3321, 2013 WL 2445206, at *1, *5 (N.D. Ga. June 5, 2013) (concluding in context of county commissioner's assistant's Title VII personal staff analysis that "the question of [the] [p]laintiff's position with [the] [d]efendant is highly factual and cannot be resolved based solely on the allegations in the pleadings" (internal quotation marks omitted)); *Leving*, 1988 WL 20046, at *1–3 (declining to dismiss complaint brought by mayor's secretary, where the defendants argued the secretary fell within the "personal staff" exception); *cf. E.E.O.C. v. Reno*, 758 F.2d 581, 585 (11th Cir. 1985) ("Rather than

deciding simply that assistant state attorneys are exempt from the ADEA coverage, the district

court went on to hold that [the] defendant . . . is not an employer for purposes of the statute.

Under this aspect of the district court's holding, not only would [the position at issue] be denied

the ADEA's protections, but so would all the . . . *secretaries*[] and other personnel who are

appointed by and serve at the pleasure of the [defendant].  We believe that such a holding sweeps

too broadly . . . .").[6]

### 2.  Due Process

Defendants next move to dismiss Plaintiff's § 1983 claim for denial of due process on the

grounds that she had no constitutionally protected property interest in continuing employment

with the Town.  (*See* Defs.' Mem. 9–11.)  As Defendants point out, (*see* Reply Mem. of Law in

Supp. of Defs.' Mot. To Dismiss ("Defs.' Reply") 4 (Dkt. No. 27)), Plaintiff's argument, in

essence, is that she had a property interest in being reappointed to her position because she had

---

[6] One might protest that the resounding silence surrounding these questions is a reason to grant—rather than deny—the Motion to Dismiss because, arguably, Plaintiff has alleged facts merely "consistent with" rather than facts "plausibly suggesting" her non-status as personal staff. *See Twombly*, 550 U.S. at 557.  However, Plaintiff has done more than this—albeit not much. Indeed, Plaintiff alludes to working in a garage in the course of her position.  (*See* Am. Compl. ¶ 10(f).)  Accepting this as true, it provides some basis to think that her job duties may differ somewhat from the archetypal secretary discussed in connection with § 2000e(f)'s legislative history, and renders more difficult still the question of whether Plaintiff meets the *Teneyuca* factors.  *Cf. Brewster v. Barnes*, 788 F.2d 985, 990–91 (4th Cir. 1986) (reversing on appeal the district court's determination that the plaintiff secretary and correctional officer was the defendant sheriff's personal staff from 1975 onwards when, in 1975, their close working relationship ended and the plaintiff worked purely as a correctional officer).

For what it is worth, the Court notes that Plaintiff relies on her allegation about working in the garage to cast doubt upon the notion that she worked exclusively for the superintendent. (*See* Pl.'s Mem. 15.)  In their reply, Defendants astutely rejoin that § 2000e(f)'s personal staff exception does not require that employees be isolated from their coworkers.  (*See* Reply Mem. of Law in Supp. Of Defs.' Mot. To Dismiss 1 (Dkt. No. 27).)   Nevertheless, the significance of this allegation, from the Court's perspective, is that, inasmuch as the word "secretary" comes prepackaged with a set of expected job duties, this allegation suggests that meaning may not accord well with Plaintiff's actual responsibilities, counseling against answering the § 2000e(f) question before discovery.  In any event, discovery could shed ample light to clarify the issue.

regularly been reappointed to two-year terms over the previous 13 years and because Wargo explicitly reassured her that she would be reappointed, (*see* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss Pursuant to Rule 12(b)(6) ("Pl.'s Mem.") 9–11 (Dkt. No. 26)).  Neither claim is sufficient.

Under the Due Process Clause of the Fourteenth Amendment, no state may deprive any person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  A government employee may have a property interest in her continuing employment.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *see also Faghri v. Univ. of Conn.*, 621 F.3d 92, 99 (2d Cir. 2010) ("The due process clause requires a government employer to provide notice and opportunity for a hearing before terminating an employee with a protected property interest in his employment" (internal quotation marks omitted)).  However, property interests are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (same).  In order for a property interest in a benefit to exist, it is not enough to have an "abstract need or desire for it" or a "unilateral expectation of it;" rather, one must have a "legitimate claim of entitlement to it."  *Roth*, 408 U.S. at 577.

As relevant here, "[a] property interest in employment can . . . be created . . . by an implied contract . . . ;" however, even then, "the sufficiency of the claim of entitlement . . . must be decided by reference to state law."  *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *see also Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972) (noting in context of question surrounding college professor's tenure protections that "absence of . . . an explicit contractual provision may not

17

always foreclose the possibility that a teacher has a 'property' interest in reemployment," reasoning that "the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be 'implied.'"); *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991) (noting that "[a]dditional contractual provisions may be 'implied' into a contract as a result of a course of dealing between the parties," and that "[t]he parties through their conduct and practice can create additional rights and duties"); *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 608 (2d Cir. 1983) ("[A] property interest in employment can be created by local ordinance or by implied contract.  In either case, the sufficiency of the claim of entitlement rests on state law." (citation omitted)).  Because there is no allegation that Plaintiff had an express contractual right to be reappointed, her argument must progress on the understanding that she had an implied contract to renewed employment.

That cannot be so.  To begin, although not addressed by the Parties, New York case law makes unambiguously clear that a non-written promise to reappoint a public employee that cannot be performed within a year violates the statute of frauds, and, therefore, cannot create a property interest for due process purposes.  In *Bykofsky v. Hess*, 484 N.Y.S.2d 839, (App. Div.), *aff'd*, 481 N.E.2d 569 (N.Y.), *cert denied*, 106 S. Ct. 408 (1985), the plaintiff, who had a "long history" of jobs with the New York City government and the City University of New York, sought and allegedly obtained assurances in spring 1980 from the recently appointed president of Brooklyn College, the plaintiff's then-employer, that the plaintiff would be reappointed to his current administrative position for the next two successive academic years.  *Id.* at 840–41.  According to the complaint, were the plaintiff to be reappointed for those two years, he would have accrued 25 years of credited service with the New York City Teachers' Retirement System, which would entitle him to greater insurance, retirement, and salary benefits.  *See id.* at 841.

18

Despite the assurances of the college president, the plaintiff was not reappointed in 1981. *Id.*
Rejecting the plaintiff's § 1983 due process claim, the Appellate Division noted that the college
president's "alleged oral promise to reappoint plaintiff for two successive one-year terms is
unenforceable pursuant to the Statute of Frauds." *Id.* at 843. Likewise, New York's Statute of
Frauds today indicates, in pertinent part, that:

> [e]very agreement, promise or undertaking is void, unless it or some note or
> memorandum thereof be in writing, and subscribed by the party to be charged
> therewith, or by his lawful agent, if such agreement, promise or
> undertaking . . . [b]y its terms is not to be performed within one year from the
> making thereof or the performance of which is not to be completed before the end
> of a lifetime.

N.Y. Gen Oblig. Law § 5-701(a)(1). Here, Plaintiff seems to suggest that she was—and
presumably would continue to be—appointed to two-year terms in her job. (*See* Am. Compl.
¶ 10(b) ("Plaintiff has been re-appointed to her position every two years since the time of her
initial hire in March 2000, and she had a due process right to that position."); *id.* ¶ 10(o))
("However, prior after [sic] his election, Wargo had personally assured Plaintiff on several
occasions that her position was secure, since she had been working in it for 'so long', and that he
intended to keep her on as a personal assistant."). As such, it plainly contravenes the statute of
frauds, and is, therefore, insufficient to create a property interest under New York law. *See
Bykofsky*, 484 N.Y.S.2d at 843; *cf. Kant v. Columbia Univ.*, No. 08-CV-7476, 2010 WL 807442,
at *3 (S.D.N.Y. Mar. 9, 2010) ("The alleged oral contract—although phrased in one-year
increments—provides for performance over a two-year period, and thus violates the statute of
frauds, rendering it unenforceable.")

    To the extent that Plaintiff would respond that Wargo's assurances were not for a two-
year term, but rather for an indefinite term, this would be tantamount to at-will employment.
*See, e.g.*, *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 137 (2d Cir. 2007) ("Under

New York law, 'employment for an indefinite or unspecified term' is presumed to be 'at will and freely terminable by either party at any time without cause or notice.'" (alterations and ellipses omitted) (quoting *Horn v. N.Y. Times,* 790 N.E.2d 753, 755 (N.Y. 2003))); *Jones-Kahn v. Westbury Bd. of Educ.-Westbury Union Free Sch. Dist.*, No. 13-CV-7144, 2015 WL 1529839, at *13 (E.D.N.Y. Mar. 31, 2015) ("Under New York law, an employment relationship covering an indefinite period of time is deemed to be at-will, and as such is terminable at any time by either party, with or without cause." (internal quotation marks omitted)); *Vassallo v. Texaco Inc.*, 422 N.Y.S.2d 747, 748 (App. Div. 1979) ("[A]n offer for employment for an indefinite period constitutes a hiring at will which can be terminated by either party without a showing of cause."). Such employment does not amount to a property interest.  *See Baron v. Port Auth.*, 271 F.3d 81, 89 (2d Cir. 2001) ("[A]t-will employment is not a constitutionally protected property interest."); *Mace v. Cty. of Sullivan*, No. 05-CV-2786, 2009 WL 413503, at *8 (S.D.N.Y. Feb. 11, 2009) (same).

Therefore, Plaintiff's only hope to salvage her due process claim lies in Defendants' historic practice of reappointing her to her job.  In support of her position, Plaintiff cites three cases—*Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775 (2d Cir. 1991), *Ciambriello v. County of Nassau,* 292 F.3d 307 (2d Cir. 2002), and *Harhay v. Town of Ellington Board of Education*, 323 F.3d 206 (2d Cir. 2003)—for the proposition that she had a property interest in her status as a full-time employee.  However, each of these cases involved a plaintiff with something more than just a long history at his or her respective place of employment: In *Ezekwo*, the plaintiff had a property interest in being appointed chief resident in her medical residency program where she applied to that program against a backdrop of an existing policy, reduced to writing, of cycling each accepted resident through the chief resident position.  *See* 940

F.2d at 777, 782–83.  In *Ciambriello*, the Second Circuit concluded that the plaintiff had a property interest in his job—if he could establish that his demotion contravened the relevant collective bargaining agreement.  *See* 292 F.3d at 314–15.  And in *Harhay*, the Second Circuit was explicit that the plaintiff "had a *contractual right*, according to the terms of the [collective bargaining agreement], to be reappointed to any vacant position for which she was qualified." *See* 323 F.3d at 212 (emphasis added).  In contrast, numerous cases make clear that an employee whose position requires reappointment has no protectable property interest, absent some additional basis to find one, in her subsequent reappointment.  *See, e.g.*, *Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301, 332 (E.D.N.Y. 2012) (finding no property interest in reappointment to medical staff position where the medical center's bylaws "set forth procedures regarding applications for reappointment . . . and appeals of any denial of reappointment," but where the plaintiff pointed to "no provision . . . that provide[d] [her] with an entitlement to reappointment to the medical staff."); *Baxter v. Anello*, No. 04-CV-428, 2008 WL 489272, at *3 (W.D.N.Y. Feb. 20, 2008) ("[The] [p]laintiff relies upon the fact that at least one former City Clerk . . . was consistently reappointed as City Clerk by different mayors.  Although that fact may have created for the plaintiff an *expectation* of reappointment, it did not create a *property right* to reappointment." (emphasis in original)); *Schwartz v. Mayor's Comm. on Judiciary of City of N.Y.*, 657 F. Supp. 29, 30 (S.D.N.Y. 1986) (finding no property interest in reappointment to family court judgeship, reasoning that "the New York Constitution provides that an appointment as a Family Court judge shall be for a term of ten years," and that "[n]o mention is made of any right of an incumbent to the Family Court to reappointment"), *aff'd*, 816 F.2d 54 (2d Cir. 1987); *Ause v. Regan*, 399 N.Y.S.2d 526, 531 (App. Div. 1977) (noting that the plaintiff "allege[d] no contractual or other assurance, express or implied, of his reappointment as

hospital superintendent," and that, therefore, "[a]s an appointee, whose term of office had

expired and who was occupying the position only as a hold-over . . . , [the] [plaintiff] cannot be

said to have had sufficient expectancy of continued employment to constitute a protected

property interest" (alteration and internal quotation marks omitted)).  Plaintiff has provided no

basis to think that a 13-year tenure changes that calculus in any meaningful way.  Accordingly,

Plaintiff lacks an adequate property interest, and her due process claims are dismissed

accordingly.

### 3.  Qualified Immunity

Defendants also move to dismiss the claims against Phillips and Wargo because they are,

Defendants assert, protected by the doctrine of qualified immunity.  (*See* Defs.' Mem. 11–12.)

In so moving, Defendants' argument was apparently limited to Plaintiff's § 1983 claims.  (*See id.*

("Because no clearly established law proscribes the individual defendants' decision to not

reappoint [P]laintiff following Mr. Wargo's election, Plaintiff's 42 U.S.C. § 1983 claims against

Mr. Wargo and Mr. Phillips should be dismissed.").)  Nevertheless, in her Opposition to

Defendants' Motion, Plaintiff argues that "the laws against sexual harassment, sexual

discrimination and retaliation for opposing such forms of discrimination are clearly established,"

and that "[w]hile there is no individual liability under Title VII, there is individual liability under

[§] 296 of the New York Human Rights Law, and there is individual liability under [§] 1983 for

procedural and substantive due process violations."  (Pl.'s Mem. 23.)  Perhaps consistently with

that line of reasoning, Plaintiff asserts that "the evidence strongly suggests that Phillips and

Wargo harbored animus towards [P]laintiff and colluded to terminate [P]laintiff and to deprive

her of her employment."  (*Id.* at 24.)  In reply, Defendants stress that (1) Plaintiff's arguments

that Phillips and Wargo acted with "animus" "misses the mark" because allegations concerning

state of mind are not "relevant to the qualified immunity analysis, which is primarily objective in nature," (2) that no clearly established law showed Plaintiff had a "clear entitlement" to her position for purposes of a due process analysis, and (3) that Defendants qualified immunity claims with respect to Plaintiff's withdrawn § 1983 First Amendment retaliation claim are moot. (*See* Defs.' Reply 6–7.) Plaintiff's argument concerning Wargo's and Phillips' state of mind, therefore, appears to proceed from the understandable but mistaken belief that Defendants have moved for qualified immunity with respect to her New York State Human Rights Law claims. Defendants' Reply, however, both is consistent with their initial Memorandum of Law and makes clear that Defendants sought qualified immunity only on the basis of Plaintiff's § 1983 claims. Therefore, because Plaintiff has withdrawn her non-due process § 1983 claim and because the Court has already dismissed Plaintiff's § 1983 due process claims, there is no need to consider the qualified immunity question. *See Carey v. City of Mt. Vernon*, No. 09-CV-3191, 2010 WL 3912400, at *5 (S.D.N.Y. Sept. 13, 2010) ("[A]ll claims [including § 1983 claims] against [one individual defendant] must be dismissed, and there is no need for the [c]ourt to reach her assertion of qualified immunity.")

### 4. Town Law § 67

Defendants next move to dismiss Plaintiff's state-law claims because they are barred by the notice-of-claim requirement found in Town Law § 67. (*See* Defs.' Mem. 12–13.) Defendants are correct.

In its entirety, Town Law § 67 provides:

1. Any claim including a claim specified in section sixty-five-a of this chapter which may be made against the town or town superintendent of highways for damages for wrong or injury to person or property or for the death of a person, shall be made and served in compliance with section fifty-e of the general municipal law.

2. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

3. This section shall not apply to actions upon claims for damages or compensation for property taken by condemnation for any public purpose.

N.Y. Town Law § 67.   "[I]n a federal court, state notice-of-claim statutes," like those contained in Town Law § 67 and General Municipal Law §§ 50-e and 50-i, "apply to state-law claims." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis omitted); *see also Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-CV-974, 2015 WL 5729969, at *44 (S.D.N.Y. Sept. 30, 2015) (same); *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.").  Plaintiffs are required to serve the notice of claim "within [90] days after the claim arises."  N.Y. Gen. Mun. Law § 50-e(1)(a).  This notice of claim requirement is "construed strictly by New York state courts," and a "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy*, 164 F.3d at 793–94 (internal quotation marks omitted).  While "New York's notice of claim requirements are not applicable to [§] 1983 claims brought in federal court . . . the requirements do apply to state law personal injury claims that are brought in federal court as related to [§] 1983 cases."  *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006); *see also Penree v. City of Utica*, No. 13-CV-1323, 2016 WL 915252, at *5 (N.D.N.Y. Mar. 4, 2016) ("Federal courts . . . apply state notice of claim statutes to state law claims . . . .").  Where a plaintiff has not complied with the terms of Town Law § 67, dismissal is typically appropriate.  *Smith v. Scott*, 740 N.Y.S.2d 425, 432 (App. Div. 2002) (noting in context of Town Law § 67 claim that "[f]ailure to comply with provisions requiring notice and presentment of claims prior to the commencement of

litigation ordinarily requires dismissal" (internal quotation marks omitted)); *see also El v. City of N.Y.*, No. 14-CV-9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015) (explaining that, "[a]bsent a showing of . . . a notice of claim, the complaint may be dismissed for failure to state a cause of action." (internal quotation marks omitted) (citing, inter alia, N.Y. Gen. Mun. Law §§ 50-e, 50-i)); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing N.Y. Gen. Mun. Law § 50-i(1)(b))).

Here, the case law makes clear that the "injury to person" that Town Law § 67 contemplates includes employment discrimination claims brought pursuant to Executive Law § 296, the provision upon which Plaintiff relies for her second cause of action. *Picciano v. Nassau Cty. Civil Serv. Comm'n*, 736 N.Y.S.2d 55, 61 (App. Div. 2001) ("[Town Law § 67] requires compliance with the notice of claim provisions in General Municipal Law §§ 50-e and 50-i for, inter alia, 'any claim . . . for damages for wrong or injury to person or property.' Such language is broad enough to include an employment discrimination claim based on Executive Law § 296." (italics omitted)); *Scopelliti v. Town of New Castle*, 620 N.Y.S.2d 405, 406 (App. Div. 1994) ("While the plaintiff correctly argues that an action brought pursuant to Executive Law § 296 is not a tort claim which falls within the notice provisions of the General Municipal Law, nevertheless, his action must be dismissed [pursuant to Town Law § 67]." (citations omitted)).

Here, Plaintiff has not alleged that she complied with Town Law § 67. Rather, she says that "there is no requirement that notice of claims be filed against individual defendants." (Pl.'s Mem. 24.) For that proposition, she cites *Goodwin v. Pretorius*, 962 N.Y.S.2d 539, 545 (App. Div. 2013), for its observation that:

> the courts have misapplied or misunderstood the law in creating, by judicial fiat, a requirement for notices of claim that goes beyond those requirements set forth in the statute. If the legislature had intended that there be a requirement that the individual employees be named in the notices of claim, it could easily have created such a requirement.

*See id.* at 545.  However, even if individual employees need not be named in a notice of claim, *see id.*, the relevant statutes make clear that a notice of the particular claim must nevertheless be submitted, *see* N.Y. Town Law § 67 ("Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law."); N.Y. Gen. Mun. Law § 50-i ("No action . . . shall be prosecuted or maintained against a . . . town . . . for [specified injuries] alleged to have been sustained by reason of the negligence or wrongful act of such . . . town . . . or of any officer, agent[,] or employee thereof . . . , unless, [among other things,] a notice of claim shall have been made and served upon the . . . town . . . in compliance with section fifty-e of this article . . . .").  Therefore, because Plaintiff has not alleged that she filed a notice of claim against the Town, her Executive Law § 296 claim is dismissed.  *See El*, 2015 WL 1873099, at *8 ("Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action." (internal quotation marks omitted)); *Naples*, 972 F. Supp. 2d at 390 ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing N.Y. Gen. Mun. Law § 50–i(1)(b))).

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss Plaintiff's due process, First Amendment, and Executive Law § 296 claims is granted; Defendants' Motion is, however,

denied with respect to Plaintiff's Title VII claim. The Clerk of the Court is respectfully

requested to terminate the pending Motion. (*See* Dkt. No. 19.)

SO ORDERED.

Dated:      March 31 , 2016
               White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

27