```
UNITED STATES DISTRICT COURT           USDC SDNY
SOUTHERN DISTRICT OF NEW YORK          DOCUMENT
------------------------------------ X ELECTRONICALLY FILED
                                     : DOC #: _____
CHERYL CROCI,                        : DATE FILED: December 8, 2017
                                     :
                         Plaintiff,  :
                                     :
              -v-                    :  14-cv-5138 (KBF)
                                     :
TOWN OF HAVERSTRAW, GEORGE WARGO,    :  OPINION & ORDER
individually, and HOWARD PHILLIPS,   :
individually,                        :
                                     :
                        Defendants.  :
------------------------------------ X
```

KATHERINE B. FORREST, District Judge:

On July 9, 2014, plaintiff Cheryl Croci, who had previously been employed by the Town of Haverstraw, New York, brought this action against the Town of Haverstraw (the "Town") and against George Wargo, the superintendent of the Town's Highway Department, and Howard Phillips, the Town Supervisor, in their individual capacities, alleging, among other things, retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.

Defendants now move for summary judgment. For the reasons set forth below, that motion is GRANTED.

I. BACKGROUND

A. Factual Background

The following facts are materially undisputed and all inferences are drawn in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Plaintiff, a female, worked for the Town of Haverstraw from 1997–2013.

(Second Amended Complaint ("SAC")), ¶¶ 9–36.) She was first employed on a part-time basis (from 1997–2000), and became a full-time employee in 2000. (Id. ¶¶ 9–10.) She began work for the Town's Department of Highways on or about March 2000. (Id. ¶ 11.) She was, first, a "clerk" for the Department, then a "clerk typist," and finally became a "confidential secretary"[1] to the Superintendent of Highways, Frank Brooks, on or about January 28, 2002. (Id. ¶¶ 10, 15, 17; ECF No. 57, Defendants' Local Rule 56.1 Statement ("Defs.' 56.1 Statement").)

Defendant Howard Phillips was, at all relevant times, the Town Supervisor. (SAC ¶ 8.) Defendant George Wargo succeeded Brooks as Superintendent of Highways. (Id. ¶ 34.)

In 2013, plaintiff's employer chose not to seek re-election. (Defs.' 56.1 Statement ¶ 16.) A campaign followed; the two candidates vying in the primary for the democratic nomination were defendant Wargo and non-party John Piperato. (Id.) Defendant Wargo won both the primary and general elections and subsequently terminated plaintiff's employment in December 2013. (Id. ¶¶ 16, 21.)

1. Plaintiff's Complaints

On or about March 2, 2010, plaintiff began to make formal complaints about sexual discrimination and a hostile work environment based on gender. (SAC ¶ 18.) As a result of her claims, the Town instigated two investigations: while the first concluded that her complaints were unsubstantiated, the second found that her

---

[1] While the parties devote considerable energy to exploring whether "confidential secretary" was an accurate description of plaintiff's work, as that title carries legal significance, the Court does not explore the question here as it decides the motion on alternate grounds.

2

gender-based hostile work environment claims were, in fact, substantiated. (Id. ¶¶ 18–22.) After the second investigation, plaintiff's harasser was suspended and told to avoid further contact with plaintiff. (Id. ¶ 23.) Plaintiff alleges—without support—that Phillips (in his role of Town Supervisor) was "not pleased" about her complaints.[2] (Id. ¶ 21.)

In or about 2011, plaintiff filed a lawsuit in Rockland County State Supreme Court, alleging sexual harassment, sexual discrimination, and hostile work environment based upon her gender. (ECF No. 56, Pitkoff Affidavit ("Pitkoff Aff.," Ex. F.) On December 1, 2014, that court granted the Town's motion for summary judgment. (Id., Ex. G.) Plaintiff appealed to the appellate division; it affirmed the judgment of the Supreme Court. 146 A.D.3d 748 (N.Y. App. Div. 2017), leave to appeal denied, 80 N.E.3d 404 (N.Y. 2017). Defendant Phillips was aware of this lawsuit. (ECF No. 56-15, Phillips Deposition ("Phillips Dep."), at 38–39.)

In March or April 2012, plaintiff attended a luncheon for the Superintendents of Highways Association. (SAC ¶ 25.) Defendant Wargo was in attendance. (Id.) According to plaintiff, she was forced to confirm in front of Wargo that she had pending sexual harassment charges against the Town. (Id. ¶ 26.) Defendant Wargo does not remember this conversation. (ECF No. 56-12, Wargo Deposition ("Wargo Dep."), at 48).

On or about July 2013, plaintiff filed a complaint with the EEOC. (SAC

---

[2] This allegation (and the others that follow) as to defendant's state of mind, is inadmissible and therefore the Court does not consider it. See Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.") (internal quotation marks and citations omitted).

¶ 33.) The Town was served with a copy of the EEOC Complaint. (Id.)

    2. The 2013 Election

In 2013, defendant Wargo and John Piperato competed in an election for Superintendent of Highways; Wargo won the primary and then the general election in November 2013. (Defs.' 56.1 Statement ¶¶ 16, 19.) Upon taking office, Wargo terminated plaintiff's employment in December 2013, replacing her with a campaign supporter and long-time friend of his. (Id. ¶ 21.)

Plaintiff alleges that, in retaliation for her protected activities (launching complaints and filing a law suit) defendant Phillips attempted to influence the candidates for Town Supervisor (including Wargo—who won—and Piperato—who lost) to fire her in exchange for his support. Plaintiff's declaration states that "John Piperato told me that he had met with Howard Phillips . . . [and that Phillips had asked Piperato] . . . if he (Piperato) would retain me if he was elected." (ECF No. 62, Croci Declaration ("Croci Decl."), ¶ 31.) Plaintiff "understood this to be a clear indication that Phillips no longer wanted me to serve in my general secretary role, and that he wanted me out." (Id.)

Piperato (the losing candidate), denies that Phillips applied any pressure to dismiss plaintiff, stating in his sworn affidavit that:

> At no time did Howard Phillips ever say or suggest in any way that I would receive his political support in exchange for not maintaining

4

Cheryl Croci's employment with the Town, if I were to be elected Superintendent of Highways. No such communication or 'agreement,' as described in Plaintiff's Amended Complaint . . . ever took place."[3]

(ECF No. 56-14, Piperato Affidavit ("Piperato Aff."), ¶ 3.)

For his part, defendant Phillip swears in his deposition that he did not at any point "suggest to Mr. Piperato that he would get [his] backing for the superintendent's position if he fired plaintiff once he was elected." (Phillips Dep. 56:14-19.)

Throughout the campaign, Phillips in fact supported Wargo's candidacy. (Croci Decl. ¶ 33.) Plaintiff alleges—again without support—that "Wargo agreed to honor Phillips' wish that Plaintiff be terminated, in exchange for Phillip's [sic] backing." (SAC ¶ 31.) Phillips denies any conversations with Wargo about plaintiff. (Phillips Dep. 68:2-4.) Wargo also denies any such conversation. (Wargo Dep. 32:14-18).

For her part, plaintiff signed Piperato's petition for supervisor and obtained signatures from five of her family members on his behalf. (Plaintiff's Deposition ("Plaintiff's Dep.") 66–72.

After Wargo defeated Piperato, he appointed Annamaria Badenchini, an acquaintance of his for over thirty years, and a campaign supporter, to be his confidential secretary, and told plaintiff that she would not be retained. (Wargo Aff. ¶¶ 2–5; Defs.' 56.1 Statement ¶ 21.) This litigation followed.

---

[3] Plaintiff submitted an additional undated affidavit from Piperato, in which he stated that he had indeed had a conversation with Phillips in which Phillips inquired as to whether he intended to retain plaintiff on staff; however, this statement does not contradict his deposition testimony that he was never asked to fire plaintiff, or promised favors in return for doing so.

5

B. Procedural Background

Plaintiff first filed suit on July 9, 2014. (ECF No. 1.) She amended her complaint on April 6, 2015, and defendants moved to dismiss all claims on June 26, 2015. (ECF No. 19.) On March 31, 2016, the motion was granted in part and denied in part, leaving only plaintiff's Title VII Retaliation claims against the Town remaining. (ECF No. 30.) On April 15, 2017, plaintiff filed a Second Amended Complaint. (ECF No. 47.)[4]

On June 23, 2017, defendants moved for summary judgment. (ECF No. 54.) This matter was transferred to the undersigned on September 28, 2017.

II. LEGAL PRINCIPLES

A. Summary Judgment

Summary Judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322–23.

---

[4] The Second Amended Complaint initially, in error, contained a Due Process claim, despite the fact that the Court's previous Order had dismissed this claim. (ECF Nos. 30, 47). Plaintiff subsequently agreed to withdraw that claim. (ECF Nos. 49, 50.)

6

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted). In addition, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted). In opposing a motion for summary judgment, a plaintiff "cannot rely on inadmissible hearsay." Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 924 (2d Cir. 1985).

B. Title VII Retaliation

Pursuant to Title VII, an employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or

7

participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

"Protected activity for purposes of Title VII and NYSHRL retaliation claims encompasses an employee's complaint to supervisors about alleged unlawful activity, even if the activity turned out not to be unlawful, provided that the employee 'had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'" Rodas v. Town of Farmington, 567 Fed. Appx. 24, 26 (2d Cir. 2014) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001)).  "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013).

Retaliation claims are evaluated under a burden-shifting analysis. See, e.g., Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768–69 (2d Cir. 1998) (citations omitted).  First, a plaintiff must make out a prima facie case of retaliation by showing:  "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy, 241 F.3d at 282–83.  The defendant then must articulate a legitimate, non-retaliatory reason for the alleged retaliatory conduct. Quinn, 159 F.3d at 768–69 (citations omitted).  If defendant meets that burden, "plaintiff must adduce evidence sufficient to raise a fact issue as to whether the employer's reason was

8

merely a pretext for retaliation." Id. at 769 (internal quotation marks, alteration, and citation omitted).

"A plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). However, the temporal proximity must be "very close" to establish the requisite causality. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (holding that 20 months between the employee's action and the alleged retaliatory action provided "no causality at all."). The Second Circuit has never drawn a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship . . . ." Gorman-Bakos v. Cornell Coop. of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). Rather, the court should "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). Courts in this Circuit have thus found, variously, that three months is too great a time to allow the inference of causation, Hollander v. Am. Cynamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990) and that an eight month gap is sufficient, Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980). See also Quinn, 159 F.3d

at 769 (discharge <u>less than two months</u> after sexual harassment complaint filed was <u>prima facie</u> evidence of causal connection); <u>Chamberlin v. Principi</u>, 247 Fed. App'x 251, 254 (2d Cir. 2007) (no causal connection where plaintiff filed an EOOC complaint and was terminated five months later). Alternatively, a plaintiff may produce <u>direct</u> evidence of retaliatory animus against plaintiff by the defendant. <u>See</u> <u>Taylor v. Seamen's Soc. for Children</u>, 2013 WL 6633166, at *20 (S.D.N.Y. Dec. 17, 2013).

III.  DISCUSSION

Defendants make two primary arguments in support of their motion: 1) that plaintiff is not an "employee" within the meaning of 42 U.S.C. § 2000e(f); and 2) that plaintiff has failed to proffer any admissible evidence as to the causal connection between her protected activity (reporting her harassment claims and filing suit) and the adverse employment action (her termination). As such, they argue that there are no triable issues of material fact and that summary judgment as a matter of law is appropriate. For her part, plaintiff points to triable issues of fact as to her status as an employee, and maintains that she has carried her burden as to the causal connection.

Without deciding the issue, the Court assumes for this Opinion that plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f). However, the Court agrees with defendants; plaintiff has failed to make out a prima facie case of retaliation.

To establish a prima facie case of retaliation, plaintiff must show: 1) that she

10

participated in a protected activity; 2) that the defendant knew of the protected activity; 3) that she suffered an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action. McMenemy, 241 F.3d at 282–83.  Defendant claims that plaintiff has not established the fourth element—causal connection.  Plaintiff proffers the following in support of her claim: 1) a conversation she alleges occurred between Phillips and Piperato in which Phillips inquired whether Piperato intended to keep plaintiff as an employee if elected; 2) her entirely unsubstantiated belief that Phillips put pressure on Wargo to terminate her employment; and 3) the temporal proximity of her lawsuit and the adverse employment action.

Plaintiff's evidence regarding the conversation between Phillips and Piperato—which plaintiff presents as the sole evidence of retaliatory intent by Phillips—is insufficient to raise a triable issue on that claim.  Viewed in the light most favorable to her, no causal connection between this conversation and the adverse employment action is possible since neither Phillips nor Piperato terminated Croci's employment.[5]  Plaintiff's employment was terminated instead by Wargo, who has presented uncontroverted evidence that he never discussed plaintiff

---

[5] Plaintiff's evidence as to this conversation is first, made up of inadmissible hearsay; and second, based on an undated affidavit.  28 U.S.C. § 1746 allows unsworn declarations under penalty of perjury in the following manner:  "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".  To submit an undated affidavit is a technical violation, and as such the affidavit should be excluded.  However, courts have often allowed an undated § 1746 affidavit as a discretionary matter.  See, e.g., U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc., 2014 WL 4652712, at *3 n.2 (S.D.N.Y. Sept. 2, 2014); BMS Entm't/Heat Music LLC v. Bridges, 2005 WL 2482493, at *2 n.1 (S.D.N.Y. Oct. 7, 2005).  The Court need not decide the question, because even assuming arguendo that Phillips inquired as to whether Piperato would continue plaintiff's employment, this does not raise a triable issue of material fact.

with Phillips. (See Wargo Dep. 32.) Plaintiff's speculation that Wargo "agreed to honor Phillips' wish that Plaintiff be terminated, in exchange for Phillip's [sic] backing" (SAC ¶ 31) is inadmissible, and cannot support a triable issue.

Having failed to raise a triable issue of fact as to pressure exerted by Phillips to terminate plaintiff's employment, plaintiff's final redoubt is her allegation of temporal proximity. According to plaintiff, at the luncheon in March or April of 2012, she stated in Wargo's presence that she had sexual harassment charges pending against the town. (Her complaints had been filed in 2010, and her lawsuit initiated in 2011.) There is no evidence that Wargo was ever made aware of any additional facts relating to plaintiff's claims, including her EEOC complaint in 2013. Following the November 2013 election, Wargo informed plaintiff (in December 2013) that her employment would be terminated, and that he would, instead, be hiring his long-time friend and supporter.

In determining whether temporal proximity, without more, can establish a causal connection, the Court must use its "judgment about the permissible inferences it can draw." Espinal, 558 F.3d at 129. And while the Second Circuit has no bright-line rule as to the "outer limits" of a claim based on temporal proximity, the Supreme Court has held that twenty months is too long. Clark Cty, 532 U.S. at 273–74. In Clark County, twenty months had elapsed from the time that plaintiff had filed an EEOC complaint until an adverse employment action was taken. Despite the fact that her litigation was not resolved, then, the Court found that temporal causality was lacking. Here, twenty or twenty-one months elapsed

12

between the time plaintiff allegedly informed Wargo of her complaint and her termination—not the "very close" proximity required. Id.

In sum, plaintiff has proffered no evidence which would allow a reasonable fact-finder to find that the but-for cause of her termination was retaliation. On the other hand, defendants have put forward evidence showing legitimate reasons for the adverse employment action—namely plaintiff's support of defendant Wargo's political opponent, and defendant Wargo's long personal relationship with plaintiff's replacement. The Court therefore GRANTS summary judgment to the defendants.

IV. CONCLUSION

For the reasons discussed above, defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is directed to close the motion at ECF No. 54 and terminate the action.

SO ORDERED.

Dated: New York, New York
December 8, 2017

_____
KATHERINE B. FORREST
United States District Judge